UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                   :

STACY ROYSTER,                   :        08 CV 131 (ARR)
                   :

          Petitioner,      :
   -against-                :        OPINION AND ORDER
                   :

ADA PEREZ                :        NOT FOR PRINT OR
Superintendent, Bedford Hills Correctional Facility,  :        ELECTRONIC
                   :        PUBLICATION
         Respondent.     :
                   :
------------------------------------------------------------------- X

ROSS, United States District Judge:

      Stacy Royster, represented by counsel, filed this petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 on January 9, 2008. The petitioner claims that her guilty plea was

invalid and that she received ineffective assistance of counsel. For the reasons that follow, her

petition is denied.

## BACKGROUND

      On April 30, 2002, the petitioner, represented by trial counsel Robert Didio, pled guilty to

robbery in the first degree pursuant to a plea agreement that proposed a seventeen year sentence.

See Appendix on Appeal at A-120, People v. Royster, 835 N.Y.S.2d 732 (N.Y. App. Div. 2007)

(transcript of April 30, 2002 proceeding in Queens County Supreme Court). During the plea

allocution, the trial judge confirmed that the petitioner understood the charge to which she was

pleading guilty and the rights that she was waiving by doing so and that the petitioner was

entering her plea voluntarily. Id. at A-121–A-123, A-128. In response to questioning by the

prosecutor, the petitioner admitted that she had agreed, with four other co-defendants, to rob a

1

Chinese food delivery man. Id. at A-124–A-125. During the robbery, the petitioner's co-defendants assaulted the delivery man with bricks, resulting in his death. Id. at A-125–A-127. Based on this colloquy, the court accepted the petitioner's guilty plea. Id. at A-127. The trial court later sentenced the petitioner to seventeen years in prison and assessed the mandatory $210 surcharge. Id. at A-146 (sentencing transcript).[1]

On May 31, 2005, the petitioner, represented by her current counsel, filed a motion to vacate her judgment of conviction and sentence pursuant to N.Y. Crim. Proc. L. § 440.10, claiming that she lacked the mental capacity to enter a guilty plea, that she received ineffective assistance of counsel, and that her plea allocution was insufficient to establish a knowing, intelligent and voluntary waiver of her constitutional rights. See Pet. ¶¶ 30-31. This motion was denied, and the petitioner appealed. On May 15, 2007, the Appellate Division, Second Department denied her appeal by written decision. People v. Royster, 835 N.Y.S.2d 732 (2007). On August 30 2007, the Court of Appeals denied her leave to appeal. Having exhausted all avenues of appeal within the state court system, the petitioner filed the instant petition on January 9, 2008.

## DISCUSSION

### A.    AEDPA Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996,

---

[1]The petitioner claims that she was also sentenced to five years of post-release supervision, see Pet. ¶ 2, but the sentencing minutes do not mention any period of post-release supervision. See Appendix on Appeal at A-130–A-146, People v. Royster, 835 N.Y.S.2d 732 (N.Y. App. Div. 2007).

established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that, although "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to

3

suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

This deferential review of state court judgments is available only when the federal claim has been "adjudicated on the merits" by the state court. Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). If there is no such adjudication, the deferential standard does not apply, and "we apply the pre-AEDPA standards, and review de novo the state court disposition of the petitioner's federal constitutional claims." Id. (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)). For the purposes of AEDPA, a state court "adjudicates" a petitioner's federal constitutional claims "on the merits" whenever "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

In addition, any determinations of factual issues made by a state court "shall be presumed to be correct," and the petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). See Schriro v. Landrigan, 550 U.S. 465, 127 S.Ct. 1933, 1939-40 (2007).

## B.  Petitioner's Claims

### 1.  Voluntariness of the Petitioner's Guilty Plea

The petitioner first challenges the validity of her guilty plea, arguing that the trial court failed to inquire into her history of mental illness and the medications that she was taking, see Pet. ¶¶ 46-65, and that the trial court did not inform her that her sentence included a period of post-release supervision. See Pet. ¶¶ 67-74.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the

defendant.'" Hill v. Lockhart, 574 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400

U.S. 25, 31 (1970)). The Second Circuit has summarized the relevant factors:

> As a general matter, a plea is deemed "intelligent" if the accused had
> the advice of counsel and understood the consequences of his plea,
> even if only in a fairly rudimentary way; it is deemed "voluntary" if
> it is not the product of actual or threatened physical harm, mental
> coercion overbearing the defendant's will, or the defendant's sheer
> inability to weigh his options rationally.

Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988). The court will uphold a guilty plea

entered by a defendant "'fully aware of the direct consequences . . . unless induced by threats . . .,

misrepresentation . . . , or perhaps by promises that are by their nature improper.'" Brady v.

United States, 397 U.S. 742, 755 (1970) (citation omitted).

The petitioner first argues that the trial court failed to inquire into her history of mental

illness and the medications that she was taking. See Pet. ¶¶ 46-65. She claims that the "trial

court, the District Attorney, and trial counsel were all actually aware that Petitioner had a lengthy

history of severe mental illness and treatment with psychiatric medications", Pet. ¶ 50, and that

none of these parties raised these issues during the plea allocution. Pet. ¶ 55. During the plea

allocution, the trial judge confirmed that the petitioner understood the charges to which she was

pleading guilty and the rights that she was waiving, that the petitioner had not been threatened,

coerced, or promised anything beyond the plea agreement, and that the petitioner was "entering

this plea voluntarily of [her] own free will," but the trial judge did not ask any specific questions

about the petitioner's mental condition or the medications that she was taking. Appendix on

Appeal at A-121–A-123, People v. Royster, 835 N.Y.S.2d 732 (N.Y. App. Div. 2007)

Citing United States v. Rossillo, 853 F.2d 1062 (2d. Cir 1988) and Saddler v. United

States, 531 F.2d 83 (2d Cir. 1976), the petitioner argues that if a trial court is aware that a defendant is taking medication for a medical condition or has a history of mental illness, the court must inquire more extensively into whether the defendant is able to knowingly and voluntarily plead guilty. See Pet. ¶¶59-62. In Rossillo, the Second Circuit held that "if there is *any* indication" that a criminal defendant "is under the influence of any medication, drug or intoxicant," then the district court must "explore on the record defendant's ability to understand the nature and consequences of his decision to plead guilty." 853 F.2d at 1066. Once a district court is "alerted that [a] defendant might be under the influence of medication," it is required to inquire into the defendant's state of mind before finding that a defendant's guilty plea was knowingly and voluntarily entered. Id. at 1067. "[B]ecause the constitutional rights of [the] defendant are at stake, the district court must be scrupulous in determining on the record whether defendant's guilty plea was voluntarily and intelligently offered. Otherwise, the plea 'has been obtained in violation of due process and is therefore void.'" Id. (quoting McCarthy v. United States, 394 U.S. 459, 466 (1969)). Similarly, in Saddler the Second Circuit held that a court that has been "alerted by [a] flurry of warning flags" that a defendant may be suffering from a mental illness should conduct further inquire into the competence of the defendant to plead guilty. 531 F.2d at 87; see also United States v. Livorsi, 180 F.3d 76 (1999) (failure to inquire into defendant's mental state, along with another problem with the plea allocution, warranted overturning conviction).

That said, these cases do not establish that the state court determination in this case was contrary to, or involved an unreasonable application of, any clearly established Supreme Court holding. See Williams, 529 U.S. at 412. The Supreme Court has held that for a guilty plea to be

6

valid, it must be voluntarily and knowingly made, see, e.g., Hill, 574 U.S. at 56, and that the defendant must be mentally competent, applying the same standard as is used to assess whether a defendant is competent to stand trial. See Godinez v. Moran, 509 U.S. 389, 400-401 (1993). However, the Supreme Court has not held that a state court must specifically inquire into a defendant's history of mental illness or medication regimen, and the state court determination in this case that the petitioner's plea was voluntary was not an unreasonable application of the Supreme Court's more general precedent outlining the requirements for a valid guilty plea.

Moreover, the state court's factual determination that the petitioner's plea was voluntary is presumed to be correct absent clear and convincing to the contrary. 28 U.S.C. § 2254(e)(1). The Supreme Court has specifically instructed that "although 'the governing standard as to whether a plea of guilty is voluntary for the purposes of the Federal Constitution is a question of federal law,' questions of historical fact, including inferences properly drawn from such facts, are in this context entitled to the presumption of correctness accorded state court factual findings. . . ." Parke v. Raley, 506 U.S. 20, 35 (1992) (quoting Marshall v. Lonberger, 459 U.S. 422, 431 (1983)); see also Stokes v. Powers, No. 9:04-CV-758, 2008 WL 1991081, at *8 (N.D.N.Y. May 5, 2008) ("On habeas review, a state court's competency determination is entitled to a presumption of correctness.")

In this case, the Second Department evaluated the extensive medical record submitted by the petitioner to support her claim that her plea had been involuntary, see Appendix on Appeal at A-147–A-970, People v. Royster, 835 N.Y.S.2d 732 (N.Y. App. Div. 2007), and concluded that the this medical evidence was "insufficient to call into question the voluntary nature of her decision to plead guilty." People v. Royster, 835 N.Y.S.2d 732, 734 (N.Y. App. Div. 2007). The

7

Second Department's "review of the relevant records, including the 'progress notes' describing the [petitioner's] condition during the weeks that preceded the plea, [left] no doubt whatsoever as to the voluntary nature of her plea." Id. This determination is presumed to be correct, and the petitioner has not presented clear and convincing evidence to rebut it. The petitioner's claim that her plea was involuntary due to her medical condition is therefore denied.

The petitioner also claims that her plea was involuntary because the trial judge did not inform her that her sentence included a period of post-release supervision. See Pet. ¶¶ 67-74. The Second Department, however, held that the petitioner's sentence does not include any such post-release supervision because the "sentence minutes themselves reflect that no such term of post-release supervision was actually imposed." People v. Royster, 835 N.Y.S.2d 732, 734 (N.Y. App. Div. 2007) (citing Hill v. United States ex rel Wampler, 298 U.S. 460 (1936)). The petitioner states that she has received audit forms from the New York State Department of Correctional Services ("NYSDOCS") indicating that she is subject to five years of post-release supervision. See Pet'r's Reply Aff. ¶ 7. She argues that since a period of post-release supervision is mandatory for a Class B Violent Felony Offense, see id. ¶ 11 (citing N.Y. Penal L. § 70.45(2)), her sentence must in fact include such a sentence. As the Second Department acknowledged, however, the sentence as ordered by the sentencing judge, and reflected in the sentencing minutes, is the petitioner's actual sentence. The petitioner cannot be subject to any additional period of custody, including post-release supervision, that was not authorized by the sentencing judge. See Earley v. Murray, 451 F.3d 71, 74-77 (2d Cir. 2006) (granting habeas petition because an administratively added period of post-release supervision, imposed by NYSDOCS but not ordered by the sentencing judge, violates due process). Because the state

8

court has correctly determined that the petitioner's sentence cannot include a period of post-release supervision that was not imposed by the sentencing judge, this challenge to the petitioner's guilty plea is moot.

## 2. Assistance Provided by Trial Counsel

The petitioner also argues that her trial counsel provided ineffective assistance because he "failed to advise Petitioner that her guilty plea would result in a sentence including 5 years of Post-Release Supervision" and "failed to adequately prepare a mental disease/defect defense, despite having actual knowledge of Petitioner's lengthy and documented history of mental illness." Pet. ¶ 75.

In order to demonstrate ineffective assistance of counsel, the petitioner must satisfy the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, the petitioner must demonstrate, first, that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 698. In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.'" Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690). Thus, a petitioner cannot prevail on a claim of ineffective assistance merely because he

9

disagrees with his counsel's strategy. See Strickland, 466 U.S. at 689. However, failure to pursue a particular course of action is not considered strategic when it is not a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." See Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001).

The petitioner raises two challenges to the representation provided by trial counsel, claiming that he did not inform her that her guilty plea would result in a sentence that included a period of post-release supervision and that he failed to adequately investigate and prepare a potential defense based on mental disease or defect. See Pet. ¶ 75. As discussed in the preceding section, the Second Department has determined that the petitioner's sentence does not include a period of post-release supervision. Since her guilty plea did not result in a sentence including this period of post-release supervision, the petitioner cannot have suffered any prejudice from trial counsel's failure to inform her that her that it would. This claim is denied.

The petitioner also challenges the scope of trial counsel's investigation into a possible defense based on mental disease or defect. The petitioner acknowledges that trial counsel "filed notice of intent to present a mental disease/defect defense and retained the services of a forensic psychologist, Dr. Sanford Drob, to evaluate the Petitioner in preparation of an insanity defense." Pet. ¶ 84; Appendix on Appeal at A-1086, People v. Royster, 835 N.Y.S.2d 732 (N.Y. App. Div. 2007). Dr. Drob prepared a detailed evaluation, see Appendix on Appeal at A-1014–A-1040, People v. Royster, 835 N.Y.S.2d 732 (N.Y. App. Div. 2007), assessing the petitioner's "psychological functioning and level of psychopathology and the potential role . . . that her mental state played with respect to her understanding, appreciation and participation in the crimes for which she has been charged." Id. at A-1014. Dr. Drob diagnosed the petitioner as

10

suffering from "a Attention Deficit Hyperactivity Disorder with intermittent psychotic features, an Attention Deficit Hyperactivity Disorder and Alcohol and cannabis Abuse" and having "features of a severe personality disorder with Borderline, Dependent and Passive-Aggressive personality features." Id. at A-1037. Dr. Drob opined that the petitioner was "a mentally ill defendant, who was in the midst of an episode of psychological illness at the time of her offense conduct," Id. at 1038, and that the petitioner "appears to have been in a period of psychological decompensation at the time of the incident." Id. at A-1039.

At the outset of his evaluation, Dr. Drob explained that "there is an issue pertaining to psychotropic medication in this case that I have commented upon only briefly, as a detailed commentary is beyond the scope of my expertise. Further clarification can be obtained by consulting a psychopharmacologist." Id. at A-1014. The petitioner claims that trial counsel provided ineffective assistance by failing to retain a psychopharmacologist or other expert qualified to evaluate in greater detail "the effects her prescribed medication had on her brain chemistry, how the medication affected her mood, thought processes, and augmented or diminished her psychological manifestations of her illness, and the effects that a lack of medication would have had on her." Pet. ¶ 88. The petitioner alleges that without the opinion of a second, more specialized expert, trial counsel provided "inherently flawed, incorrect, and incomplete legal advice" and "convinced" her to plead guilty. The petitioner states that trial counsel "told me that my insanity defense would never work, that [the] jury would convict me regardless of any evidence that he presented about my mental illness, and that when (not if) I was convicted, the judge would sentence me to 25 years to life." Aff. of Stacy Royster ¶12, Appendix on Appeal at A-39, People v. Royster, 835 N.Y.S.2d 732 (N.Y. App. Div. 2007). She further

11

states that had she known that she had been "given the option of presenting an insanity/mental disease defense, I would have gone to trial" rather than pleading guilty. Aff. of Stacy Royster ¶20, Appendix on Appeal at A-41, People v. Royster, 835 N.Y.S.2d 732 (N.Y. App. Div. 2007).

Trial counsel had a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," although a court reviewing the reasonableness of trial counsel's decisions must apply "a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. Given the petitioner's history of mental illness and medication regime, trial counsel may have been ineffective if he had failed entirely to investigate this line of defense. See Pavel v. Hollins, 261 F.3d 210, 223 (2d Cir.2001) (finding counsel ineffective in a child sexual abuse case where his failure to call a medical expert was based on an insufficient investigation). In this case, however, the petitioner's trial counsel did investigate this line of defense, retaining a expert psychologist who produced an extensive evaluation analyzing the petitioner's extensive mental health issues and flagging the issue of the petitioner's medication regimen. The petitioner has not shown that the scope of this investigation, including his decision to retain only Dr. Drob and not a second expert, was unreasonable under the circumstances. The Second Department's determination that trial counsel "reached a justifiable conclusion to the effect that, if the defendant were to proceed to trial, she would nonetheless in all likelihood not be successful in pursuing any 'insanity defense'" was not an unreasonable application of the relevant federal law. People v. Royster, 835 N.Y.S.2d 732, 734 (N.Y. App. Div. 2007).

Furthermore, the petitioner has not demonstrated that she was prejudiced by trial counsel's conduct. The petitioner has stated that if she had been "given the option of presenting

12

an insanity/mental disease defense," she would not have pled guilty, Aff. of Stacy Royster ¶ 20, Appendix on Appeal at A-41, People v. Royster, 835 N.Y.S.2d 732 (N.Y. App. Div. 2007), but the record does not support her claim that trial counsel's decision not to retain a second expert changed her plea decision. Given that Dr. Drob had already opined that the petitioner had been "in the throes of a serious psychiatric episode at the time of the incident," Appendix on Appeal at A-1039, People v. Royster, 835 N.Y.S.2d 732 (N.Y. App. Div. 2007), the petitioner has not shown that any additional information a second expert may have been able to provide would have changed her mind concerning her decision to plead guilty. The petitioner has not presented clear and convincing evidence to rebut the state court's factual determination that the "medical evidence" she submitted was insufficient "to raise any question of fact requiring a hearing as to whether prior counsel might have been ineffective based on a failure to investigate the seriousness of the [petitioner's] mental illness." People v. Royster, 835 N.Y.S.2d 732, 734 (N.Y. App. Div. 2007). The petitioner also argues that she received a longer sentence than several of her co-defendants, all of whom actually participated in the physical attack on victim, see Pet. ¶100-101, but this result does not automatically establish an ineffective assistance claim given the myriad considerations that go into a prosecutor's decision to offer particular terms in a plea agreement and a sentencing court's decision to accept the terms of the plea agreement. The petitioner's claim that trial counsel failed to adequately prepare a defense based on mental disease or defect is therefore denied.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus.

No certificate of appealability is granted with respect to any of the petitioner's claims, since the

petitioner failed to make a substantial showing of any denial of her constitutional rights. The

petitioner has a right to seek a certificate of appealability from the United States Court of

Appeals for the Second Circuit. See 28 U.S.C. § 2253.


SO ORDERED.


s/ ARR
_____
Allyne R. Ross
United States District Judge


Dated:       May 27, 2009
             Brooklyn, New York

SERVICE LIST:

<u>Attorney for Petitioner</u>
Patrick Michael Megaro
215 Hilton Avenue
Po Box 1200
Hempstead , NY 11551

<u>Attorney for Respondent</u>
Merri Turk Lasky
Queens County District Attorney
125-01 Queens Boulevard
Kew Gardens , NY 11415